[L. A. No. 215.   Department Two.—April 7, 1897.]

ROBERT GRAHAM, RESPONDENT, *v.* FARMERS AND MERCHANTS' BANK OF LOS ANGELES, APPELLANT.

GUARANTY—SHIPMENTS IN SPECIFIC CARS.—A guarantor for the payment of drafts drawn to cover shipments of fruit to be made in cars which are specially designated in the contract of guaranty is not liable for the payment of drafts which show on their face that they were drawn to cover shipments made in different cars.

Appeal from a judgment of the Superior Court of Los Angeles County. Walter Van Dyke, Judge.

The facts are stated in the opinion of the court.

*Graves, O'Melveny,* and *Shankland,* for Appellant.

*Edwin A. Meserve,* for Respondent.

Temple, J.—Plaintiff sues to recover three hundred and twelve dollars, which he had on general deposit with the defendant, but which defendant refused to pay upon his order.

The defense is that the defendant had paid three drafts guaranteed by plaintiff amounting to four hundred and fifty dollars, which drafts had not been paid by the drawee or drawer, although demand had been made, and that thereupon the bank sequestered the deposit.

The guaranty given by plaintiff was as follows,

"Sacramento, Cal., July 25, 1895.

"*H. J. Fleishman, Cashier F. & M. Bank, Los Angeles, Cal.*

"Dear Sir: This is your authority to honor the draft of E. N. Altland & Company on P. Ruhlman & Company, New York, to cover shipments of three carloads of oranges loaded into fruit growers' express cars 12,312, 12,332, and 12,324. Said draft not to exceed $150 for each car, or a total of $450 for the three cars.

"I shall hold myself responsible for the payment of this draft by P. Ruhlman & Company on presentation.

"Yours truly,

"Robt. Graham."

This was presented to the bank July 29th, with three drafts as follows:

"$150.00.        Los Angeles, Cal., July 27, 1895.

"On demand pay to the order of Farmers & Merchants' Bank one hundred and fifty — 100 dollars, a-c A. R. L. 5,626, value received, and charge to account of

"No. 65.                              E. N. Altland.

"To P. Ruhlman & Co., New York City, N. Y.."

" $150.00.　　　　　Los ANGELES, CAL., July 27, 1895.

" On demand pay to the order of Farmers and Merchants' Bank one hundred and fifty — 100 dollars, a-c A. R. L. 4,072, value received, and charge to account of

" No. 64.　　　　　　　　　　E. N. ALTLAND.

" To P. Ruhlman & Co., New York City, N. Y."

" $150.00.　　　　　Los ANGELES, CAL., July 29, 1895.

" On demand, pay to the order of Farmers & Merchants Bank one hundred and fifty — 100 dollars, a-c F. G. E. 12,007, value received, and charge to account of

" No. 67.　　　　　　　　　　E. N. ALTLAND.

" To P. Ruhlman & Co., New York City, N. Y."

Accompanying each was a bill of lading for a carload of oranges packed in the three cars respectively mentioned in the bills of exchange.

No notice whatever was given to Graham of the acceptance of the guaranty, the advance on the drafts, or of their nonpayment.

The officers of the bank knew nothing of any correspondence or of the relations between Graham and Altland except as above. Evidently the bank was not charged with any duty with reference to the fruit which had been loaded into the cars named. They were, however, charged with knowledge of certain facts, to wit: That plaintiff supposed that the fruit already loaded in the cars named would be shipped to P. Ruhlman & Co., in consideration for which P. Ruhlman & Co. would pay the drafts. The fact that the number of the cars in which the oranges were loaded were given was itself a significant fact. The officers of the bank may well have asked why these particular cars were mentioned, if it was immaterial in what cars the fruit was shipped. It turns out that these cars were about one week on the road and could have been diverted by telegraph so as to reach New York in a day or two—ten days or so earlier than those shipped in the other cars could reach New York. According to the testimony of Graham this was quite material to P. Ruhlman & Co.

Upon presenting the letter containing the guaranty Altland also presented three bills of exchange, each one of which informed the bank, or its officers, that it was not drawn against the shipment in the three cars specially mentioned, but against shipments made in other cars. Perhaps a carload of oranges indicates a certain quantity of fruit. Upon that there was no issue. But if Graham was willing to guarantee that certain carloads would be purchased by P. Ruhlman & Co., and that they would net at least one hundred and fifty dollars per carload, that does not prove that he would be willing to make the same guaranty as to other carloads, and the judgment of witnesses and the court cannot be substituted for that of Graham himself. They cannot change his contract.

If the shipment was merely the consideration which moved Graham to give the guaranty, as appellant suggests, the bank should have concluded that Graham had some hold upon those cars, and for that reason should not have advanced the money upon entirely different shipments. The fact that the bank took bills of lading itself shows that it did not regard the recital as merely stating a fact which was of no concern to it.

I do not see how the telegram to Altland can help appellant. If it really was authority to change the guaranty so as to apply to other shipments, no doubt Graham would be liable even though the bank officers did not know of it. But it was in fact no such thing. As sent by Graham it was a refusal to guarantee payment for any other shipment. As only actual authority from Graham could help the bank, it cannot profit by any mistake made in its transmission.

The court did not err in permitting the letter from Graham to be read. The telegram expressly refers to it as explanatory—and I think it was admissible as showing the surrounding circumstances, and that the shipment of the carloads specially mentioned was deemed material by Graham in making the guaranty, and that he at the time intended that the guaranty should apply only to them.

Graham had no interest whatever in the shipments made. His guaranty was wholly a friendly act—designed to assist Altland.

The judgment is affirmed.

HENSHAW, J., and McFARLAND, J., concurred.